J. & H. CLASGENS COMPANY, Respondent, vs. SILBER and another, Garnishees, Appellants.

*May 26 — June 19, 1896.*

*Garnishment: Evidence: Judgment against principal defendant: Fraudulent conveyances: Partnership: Assumption of debts by new firm: Promissory notes: Individual indorsements.*

1. In garnishment proceedings the judgment roll in the principal action, showing that judgment was entered in favor of the plaintiff against the principal defendants upon a partnership liability contracted prior to a certain date, is *held* sufficient evidence of those facts as against garnishees to whom, it was claimed, assets of the firm had been fraudulently transferred after that date.

2. Where a partnership is formed to carry on a business theretofore conducted by one of the partners individually, a parol agreement that the other, as a part of the consideration for his admission to the business, shall assume, as a partner, his share of the existing debts thereof, and that they shall be paid by the firm, is valid and, even without an acceptance of such obligation by the creditors, is a sufficient consideration for a *bona fide* transfer of firm property to pay such a debt.

3. The mere fact that the incoming partner, in such a case, at the solicitation of the creditors, indorsed past-due notes of the other partner representing debts of the business, would not invalidate the original parol agreement by which the firm assumed such debts, or render evidence thereof inadmissible as varying the written contract of indorsement.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

Garnishment. The plaintiff corporation sued the firm of H. & J. C. Hyman on the 24th day of September, 1891, and garnished the appellants, who answered, denying liability. The complaint in the principal action alleged an indebtedness accruing prior to August 31, 1891, and judgment was rendered against the Hymans in that action by default for $6,383.81, March 16, 1893. Thereafter this garnishee action was tried before a jury, and a special verdict rendered, which was set

aside and a new trial granted. This order was affirmed by this court. *J. & H. Clasgens Co. v. Silber*, 87 Wis. 357.

A second trial was afterwards had before the court without a jury. It appeared upon this trial that on June 26, 1890, Henry Hyman, who was then a sole trader, doing business under the name of the Star Knitting Works, gave a note for $4,000, payable one day after date, to *Louis Silber*, who was his son-in-law; that on the 25th day of June, 1890, he gave a similar note for $6,000 to *Marcus Silber;* that on April 16, 1891, Henry Hyman took his son, Joseph C. Hyman, into equal partnership with him in the knitting business, and they continued the business under the name of the Star Knitting Mills; that soon after the formation of this partnership J. C. Hyman wrote his name on the back of each of said notes at the request of the *Silbers;* that on September 19, 1891, the Hymans, being insolvent, assigned in writing all the accounts of the Star Knitting Mills or of the firm of H. & J. C. Hyman to *Marcus Silber* and *Louis Silber*, the face value of which accounts was about $10,500, and the amount realized by the *Silbers* therefrom was $8,500; that the entire property of the firm was seized upon executions issued upon judgments on cognovit upon the day following the transfer of the accounts. It was claimed by the plaintiff that this transfer was without consideration and fraudulent and void as to creditors.

In addition to the facts above stated, the court found, in effect, that the notes given by Henry Hyman to the *Silbers* were claimed to have been given for money loaned at the date of the notes; that Joseph C. Hyman put some property into the business when he became a partner; that when the *Silbers* learned that the copartnership was to be formed, they both demanded the money on their notes, and it was agreed that if J. C. Hyman would indorse the notes they would let them run, whereupon J. C. Hyman wrote his name on the back of each note; that at the time of the assignment of

the accounts the firm of H. & J. C. Hyman was not indebted to the *Silbers* in any sum upon the notes signed by Henry, and indorsed by J. C. Hyman after due, but that the indebtedness upon said notes, *if any*, was "the indebtedness of Henry Hyman, with the possible individual liability of J. C. Hyman by reason of his indorsement;" that at the time of the service of the garnishee summons the *Silbers* had in their possession $8,500 of the property of the firm of H. & J. C. Hyman, which was subject to garnishment; that at the time of the assignment of the accounts to the *Silbers* the firm of H. & J. C. Hyman was indebted to various creditors in a sum exceeding $35,000.

As conclusions of law the court found: "First. That the indebtedness, *if any*, arising upon the notes signed by Henry Hyman respectively on the 25th day of June, 1890, and 26th day of June, 1890, one to *Marcus Silber* and the other to *Louis Silber*, is the individual indebtedness of Henry Hyman; that no assumption of that indebtedness was ever made by the firm of H. & J. C. Hyman. Second. That at the time of the service of the garnishee processes upon *Marcus Silber* and *Louis Silber* they were indebted to the defendants Henry Hyman and J. C. Hyman, in the sum of $8,500. Third. That the copartnership of H. & J. C. Hyman was insolvent on the 19th and 21st days of September, 1891; that the assignments of the copartnership property of H. & J. C. Hyman, dated September 19, 1891, to the garnishees, *Marcus Silber* and *Louis Silber*, of all the outstanding accounts belonging to said firm, for the purpose of paying individual liabilities of Henry Hyman, are fraudulent and void as to the plaintiff. Fourth. That *Marcus Silber* and *Louis Silber* are liable to the plaintiff as garnishees of the defendants Henry Hyman and J. C. Hyman in the sum of $6,383.81, together with interest thereon from the 16th day of March, 1893, and together with costs; that

the plaintiff is entitled to judgment against said garnishees, *Marcus* and *Louis Silber*, accordingly."

Judgment for the plaintiff was rendered upon these findings, and the garnishees have appealed.

For the appellants there were briefs by *Timlin & Glicksman*, of counsel, and a separate brief by *David S. Rose*, attorney, and the cause was argued orally by *Mr. Rose* and *Mr. Nathan Glicksman*. They contended, *inter alia*, that the judgment against the garnishees goes on the ground that they were not firm creditors, while plaintiff was a firm creditor, and that consequently plaintiff was entitled to priority and the attempt to secure the garnishees was void as a fraud on the firm creditors. But the fact that plaintiff was a firm creditor was not shown. The judgment against the principal defendants was not evidence of that fact, but only of the fact of its rendition and of the relation of debtor and creditor between plaintiff and the principal defendants at the time of its rendition. There is absolutely no evidence that plaintiff was a firm creditor, except the recitals in the complaint in the principal action; but these were not recitals essential to the recovery in that action, nor upon which issue could be taken, because any joint or joint and several indebtedness would entitle plaintiff to recover. The defense which the garnishees can make under sec. 2765, R. S., goes only to the question whether or not the principal defendant is indebted to the plaintiff at the time the suit is brought. *Burton v. Platter*, 53 Fed. Rep. 901; *Bruggerman v. Hoerr*, 7 Minn. 337; *Hartman v. Weiland*, 36 id. 223; *Bloom v. Moy*, 43 id. 397; *Springer v. Bigford*, 55 Ill. App. 199; *Sweet v. Dean*, 43 id. 650; *Snodgrass v. Branch Bank*, 25 Ala. 161. The court was in error in holding that the parties were limited to the written contract of indorsement on the notes, and in excluding from consideration all other evidence showing what the terms of the contract of copartner-

ship were and what the intentions of the parties were. *Carson v. Beyers,* 67 Iowa, 606; *Walsh v. Mayers,* 111 U. S. 31; *Berkshire Woolen Co. v. Juillard,* 75 N. Y. 535; *Trowbridge v. Cushman,* 24 Pick. 310; *In re Waldron,* 98 N. Y. 671; *Seekell v. Fletcher,* 53 Iowa, 330; *Agawam Bank v. Morris,* 4 Cush. 99; *Thayer v. Smith,* 116 Mass. 363; *Booth v. Farmers & M. Nat. Bank,* 74 N. Y. 228; *Smith v. Felton,* 43 id. 419. The parol evidence offered did not contradict the indorsement or vary its terms. It merely showed that the new firm was bound by the indorsement by J. C. Hyman, not merely J. C. Hyman alone. *Weston v. McMillan,* 42 Wis. 567, 570; *Frey v. Vanderhoof,* 15 id. 397; *Ballston Spa Bank v. Marine Bank,* 16 id. 120; *Hahn v. Doolittle,* 18 id. 196; *Clifford v. Baessman,* 41 id. 597; *Severson v. Porter,* 73 id. 76; *Hœflinger v. Wells,* 47 id. 628. The oral assumption of the existing debts was sufficient. *Hage v. Campbell,* 78 Wis. 572; *Miller v. Stone,* 69 id. 617; *Wilson v. Dozier,* 58 Ga. 602; *McGill v. Dowdle, G. & Co.* 33 Ark. 311; *Marsh v. Gold,* 2 Pick. 285; *Jones v. Booth,* 10 Vt. 268; *Greenleaf v. Burbank,* 13 N. H. 454; *Arnold v. Nichols,* 64 N. Y. 117. An incoming partner may bind himself to become liable for the firm debts in consideration of the property acquired by the purchase, and such agreement is not within the statute of frauds. The creditors of a firm may recover from the incoming partner on his contract to pay the firm liabilities, though they are not parties thereto. *Poole, G. & Co. v. Hintrager,* 60 Iowa, 180; *Johnson v. Knapp,* 36 id. 616; *Phillips v. Van Schaick,* 37 id. 229; *Morrison & Co. v. Hogue,* 49 id. 574.

*O. T. Williams,* for the respondent, to the point that the court properly found that there was no assumption by the partnership of the debts to the *Silbers,* cited *Willis v. Bremner,* 60 Wis. 622; *Cribb v. Morse,* 77 id. 322; *McLinden v. Wentworth,* 51 id. 181; *Vernon v. Upson,* 60 id. 418; *Keith*

*v. Armstrong*, 65 id. 228; *Viles v. Bangs*, 36 id. 131; *Cotzhausen v. Judd*, 43 id. 213; *Davis v. Birchard*, 53 id. 492; *Blackwell v. Rankin*, 7 N. J. Eq. 152; *Hilliker v. Francisco*, 65 Mo. 598; *Cox v. Platt*, 19 How. Pr. 121; *Wilson v. Robertson*, 21 N. Y. 588; *Lester v. Abbott*, 28 How. Pr. 488; *Menagh v. Whitwell*, 52 N. Y. 146; *Hine v. Bowe*, 114 id. 358; *Second Nat. Bank v. Burt*, 93 id. 245.

WINSLOW, J.    It is claimed by the appellants that there was no sufficient proof upon the trial showing ·that the plaintiff was a creditor of the Hymans at the time of the transfer of the book accounts to the *Silbers* on the 19th day of September, 1891.    Substantially all the testimony upon this point is that contained in the judgment roll in the principal action, which was introduced and received in evidence.    It is said that this roll, as against the garnishees, is proof only of the fact of the entry of the judgment.    With this contention we cannot agree.    While there has been some difference of opinion among the courts as to the evidential effect of a judgment in such a case, it seems now quite well settled by the weight of authority that in an action by a creditor to set aside as fraudulent a conveyance of property made by his debtor the judgment in favor of the creditor and against his debtor is evidence establishing the relationship of debtor and creditor between the parties and the amount of the indebtedness, and is conclusive evidence unless impeached for fraud or collusion, or lack of jurisdiction in the court, or illegality in its entry.    Bump, Fraud. Conv. (4th ed.), § 587; 2 Freeman, Judg. (4th ed.), § 418, and cases cited in note.    Especially should this be the case as against the garnishees in the present case, who had by statute the right to appear in the principal action and defend it.    R. S. sec. 2765.    The record introduced in evidence showed that judgment was entered in favor of the

plaintiff against the Hymans in March, 1893, upon a firm liability contracted prior to September 1, 1891, and consequently prior to the alleged fraudulent conveyance.

There are errors in the case, however, which necessitate reversal. It is settled law in this state, as in many others, that when an incoming partner, in consideration of being received into the firm and becoming part owner of the firm property, agrees to assume with the old partner or partners the existing debts of the business, such agreement is valid and binding, though it be by parol, and that such promise is enforceable by the creditors whose debts are thus assumed. *Hoile v. Bailey,* 58 Wis. 434. In the present case there was direct evidence on the part of the two Hymans showing that when Joseph C. was received into partnership he agreed to assume as partner his share of the existing debts of Henry; and that they should be paid by the new firm; and there was no direct evidence in the case to the contrary. If this evidence was true, then it is very clear, under the rule above stated, that Henry's debts contracted in the business became obligations of the new firm, which could be at any time enforced by the creditors. While this testimony seems to have been all received, the record shows that it was all taken under the objection that it tended to vary the terms of a written contract, namely, the contract of indorsement made by J. C. Hyman when he wrote his name upon the back of the *Silber* notes. In receiving this evidence the court ruled, in effect, that he would hear it, but that it would not be permitted to vary the terms of the written contract of indorsement. This ruling was announced in different phraseology several times during the progress of the case, and there is nothing to show that the trial judge at any time abandoned that position. It is quite apparent, also, from careful study of the findings, that this same principle was acted upon in the decision of the case. Nowhere in the findings is it determined as matter of fact (1) whether the amount repre-

sented by the *Silber* notes was in fact a debt of the business justly owing by Henry Hyman at the time of the formation of the firm; nor is it found (2) whether the new firm in fact assumed the business debts at the time J. C. Hyman came into the firm. It is true that among the conclusions of law it is stated that no assumption of the indebtedness arising upon the *Silber* notes, *if any*, was ever made by the firm, but this is plainly not a statement of fact, but merely a legal conclusion arising from the ruling to the effect that oral testimony would not be received to show such an assumption. In fine, it is entirely plain from the whole record that the case was decided upon the theory that no such assumption of liability was of any validity, because it contradicted the written contract of indorsement of the note, and that, such being the case, there could be no liability on the part of the firm to the *Silbers*, but simply such several liability as might arise from the notes and indorsements alone; hence that the transfer of firm assets made to the *Silbers* September 19, 1891, was not to pay firm debts, but individual debts, if any, and was, on this account, fraudulent as to creditors.

We regard the premise upon which this conclusion is based as erroneous. There might be a valid assumption of the business debts of Henry Hyman by the new firm by parol, which, though made between the Hymans alone, would be valid and binding as to creditors who chose to accept or enforce it. *Hoile v. Bailey*, 58 Wis. 434. It is probably true that acceptance by the creditor is necessary to make the assumption a complete contract as between the firm and the creditor, but, in the absence of such acceptance, we can entertain no doubt that the contract of assumption is so far an obligation of the firm that it would be a perfectly good consideration for the transfer of firm property to pay it, and that, if such transfer was made in good faith, and free from fraud in other respects, it would be valid. If such an agreement was in fact made, it would be none the less valid be-

cause J. C. Hyman at another time, on the solicitation of the *Silbers,* wrote his individual name upon the backs of their past-due notes. If this latter act amounted to a contract of itself, it was an additional contract, and it did not prevent the creditor from accepting the obligation made by the assumption of debts by the firm, nor would it prevent the firm from making a transfer of firm property in good faith to the creditor in consideration of the discharge of the assumed debt.

It is evident from these considerations that there has not been a complete trial of the case. Two facts absolutely necessary to a correct decision of the case have not been determined by the trial court, namely: (1) Whether the *Silber* notes represented an actual business debt of Henry Hyman; and (2) whether the new firm assumed such debt when J. C. Hyman was admitted into the firm as a part of the consideration of such an admission. When these questions are decided, there may also arise the question whether the transfer was made with intent to hinder, delay, or defraud other creditors of the firm. We do not regard it as our duty to decide these questions upon the record before us. Such questions should primarily be passed upon by the trial court, and we think that the ends of justice will be best subserved by a new trial of the case.

*By the Court.*— Judgment reversed, and action remanded for a new trial.